*U.S. District Court For The Northern District of Illinois*

*— Attorney Appearance Form —*                                         *CH*

~~IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT~~
~~COUNTY OF DUPAGE, STATE OF ILLINOIS~~

ROBERT CASHEN,                          )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )     Case No. 08 C 268
                                        )     *08 c 268*
INTEGRATED PORTFOLIO                    )     Judge Robert M. Dow Jr.
MANAGEMENT, INC. f/k/a FIRST            )
CREDIT SERVICES INCORPORATED            )
d/b/a STANLEY WEINBERG &                )          F I L E D
ASSOCIATES, an Illinois Corporation,    )
EARL SHIELDS, and LILIANA SHIELDS,      )          MAR 1 0 2008
                                        )          *Mar 10 2008*
            Defendants.                 )        MICHAEL W. DOBBINS
                                              CLERK, U.S. DISTRICT COURT

## INTEGRATED PORTFOLIO MANAGEMENT, INC. AND LILIANA SHIELDS' MOTION FOR ENLARGEMENT PURSUANT TO RULE 6(b)

Now come Defendants, Integrated Portfolio Management, Inc. ("IPM") and Liliana

Shields ("Liliana"), by and through their attorneys, Frederick E. Roth of Roth Law Firm and

pursuant to Federal Rule of Civil Procedure 6(b) seek an enlargement so as to file the attached

Motion To Dismiss Pursuant To Federal Rule Of Civil Procedure ("Rule") 12(b)(6) and in

support thereof state:

    1. The Complaint herein was filed January 11, 2008.

    2. Pursuant to Affidavits of Service filed February 11, 2008, service was had on IPM on

January 14, 2008, Earl Shields on January 19, 2008 and Liliana on February 8, 2008.

    3. In accordance with the Summons received, defendants were required to serve an

answer upon Plaintiff's Attorney within 20 days of the respective dates of service, i.e. IPM on

February 3, 2008, Earl Shields on February 8, 2008 and Liliana on February 28, 2008 and file the

answer with the Clerk of the Court within a reasonable time after service.

4. The undersigned counsel is seeking leave to file the attached Motion To Dismiss Pursuant to Rule 12(b)(6) on behalf of IPM and Liliana, copy attached as Exhibit A.

5. Liliana and Earl Shields are married but a petition and counter-petition for dissolution is pending in DuPage County, Case No. 2007 D 2234.

6. In addition to the dissolution case, IPM and Earl Shields and Liliana have been in litigation in Cook County and DuPage County, Cases No. 2007 CH 28301 and 2007 MR 1424 respectively.

7. The Plaintiff herein had filed petitions to intervene in at least two, if not all three cases in regard to the unsigned Note which is attached to the Complaint as Exhibit No.1.

8. Although matters between Earl Shields and Liliana have recently become civil due to a vacating of the injunction entered against Earl Shields and his reinstated employment with IPM, during January and February 2008, there were significant moments of difficulty and contention regarding control of IPM and the relationship between the defendants.

9. The matters in the instant proceeding involve Earl Shields and his brother, Robert Cashen and scant records regarding their dealings. Moreover, several employees of IPM have left and later attempted to sabotage the computer system on which IPM is dependent, forcing Earl Shields and Liliana to become involved in a criminal investigation being conducted by Detective Nevara of the Village of Lombard Department of Police.

10. The foregoing matters have caused IPM and Liliana to be preoccupied and delayed in responding and/or filing a response within the required time.

11. The delay in serving Plaintiff's Attorney is only a few days and does not prejudice Plaintiff.

12. The initial status hearing is set for March 18, 2008 at 9:00 a.m.

WHEREFORE, Defendants IPM and Liliana Shields pray that this court will grant this Motion For Enlargement and allow the filing of the attached Motion To Dismiss.

Respectfully Submitted,

Frederick E. Roth, Attorney for
IPM and Liliana Shields

Roth Law Firm
47 E. Chicago Avenue, Suite 360
Naperville, IL 60540
(630) 778-1100
(630) 778-1121 (FAX)

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
COUNTY OF DUPAGE, STATE OF ILLINOIS

| | | |
|---|---|---|
| ROBERT CASHEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 268 |
| | ) | |
| INTEGRATED PORTFOLIO | ) | Judge Robert M. Dow Jr. |
| MANAGEMENT, INC. f/k/a FIRST | ) | |
| CREDIT SERVICES INCORPORATED | ) | |
| d/b/a STANLEY WEINBERG & | ) | |
| ASSOCIATES, an Illinois Corporation, | ) | |
| EARL SHIELDS, and LILIANA SHIELDS, | ) | |
| | ) | |
| Defendants. | ) | |

## LILIANA SHIELDS AND INTEGRATED PORTFOLIO MANAGEMENT, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) and (3)

Now come the Defendants, Liliana Shields ("Liliana") and Integrated Portfolio

Management, Inc.'s ("IPM") by their attorney, Frederick E. Roth of Roth Law Firm and hereby

present their Motion To Dismiss Pursuant To Federal Rule Of Civil Procedure ("Rule") 12(b)(6),

stating:

### I. Dismissal Per Rule 12(b)(6)

Rule 12(b)(6) permits motions to dismiss a complaint for "failure to state a claim upon

which relief can be granted." For a complaint to survive a motion to dismiss, "First, the

complaint must describe the claim in sufficient detail to give the defendant fair notice of what the

... claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest

that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they

do not, the plaintiff pleads itself out of court." Equal Employment Opportunity Comm'n v.

Concentra Health Servs., Inc. 496 F.3d 773, 776 (7th Cir. 2007). In determining whether the

*EXHIBIT A*

Plaintiff has cleared such hurdles, the court assumes "that all allegations in the complaint are true." <u>Jennings v. Auto Meter Prods., Inc.</u> 495 F.3d 466 (7th Cir. 2007).

## II. <u>No Signature - No Liability on Note</u>

Plaintiff alleges the Note attached as Exhibit 1 to the Complaint was agreed to by Defendant First Credit Services (n/k/a IPM) on or about February 1, 2007. The Note attached is <u>unsigned</u>. For purposes of this proceeding, the Note by its terms is a promise to pay on demand or at a definite time, i.e. October 1, 2007 and as such is a "negotiable instrument" as defined in Article 3, Section 3-104 of the Uniform Commercial Code ("Code") (810 ILCS 5/3-104).

Illinois law provides pursuant to Section 3-401(a):

> "A person is not liable on an instrument unless (i) the person signed the instrument, or (ii) the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under Section 3-402."

See also, <u>Fidelity Fed. Sav. & Loan Ass'n v. Pioneer Nat'l Title Ins. Co.</u>, 428 F. Supp. 1382 (S. D. Ill. 1977) (No person is liable upon a written instrument unless his signature appears thereon.)

No duly authorized agent of IPM signed the Note and, in fact, the co-maker identified, Earl Shields, also did not sign the Note.

Plaintiff is permitted to attach exhibits to the Complaint and the documents attached are considered part of the pleadings for purposes of a motion to dismiss. Fed. R. Civ. P. 10(c); <u>Bankcard Am., Inc. v. Universal Bancard Sys.</u>, 904 F. Supp. 753 (N. D. Ill. 1995). Here, Exhibit No. 1 to the Complaint (the "Note") is unsigned and therefore, no liability on the part of IPM (or for that matter, Earl Shields) given it is not signed.

-2-

WHEREFORE, Count I (Breach of Contract - Against IPM and Earl Shields) must be dismissed.

### III. UCC-1 (Financing Statement) Invalid

The Complaint, in part, asserts liability and contends the Note "was secured by all property of IPM" referencing Exhibit No. 2 to the Complaint, a UCC Financing Statement regarding the loan filed on or about October 5, 2007. (Compl., Par. 11 and Ex. 2).

A financing statement (UCC-1) may be filed and is effective provided the person filing same was entitled to file a record pursuant to Section 9-509 of the Code. For Plaintiff to have been entitled to file a record, i.e. initial financing statement, the debtor must authorize the filing, either directly or via a security agreement. See Sections 9-509(a) and (b) and 9-510 of the Code (810 ILCS 5/9-509(a) and (b) and 810 ILCS 5/9-510).

The Complaint and Exhibit No. 2, the UCC-1 Financing Statement, rely solely upon an unsigned Note for authorization. The court may note that although the Note references a "Security Agreement" (under Paragraph 8 of the Note), none is attached to the Complaint.

While Section 9-502 of the Code (810 ILCS 5/9-502) does not require the financing statement itself to be signed, it must have been authorized and here it was not. Section 9-625(a) of the Code (810 ILCS 5/9-625(a)) allows this court to "order or restrain collection, enforcement, or disposition of collateral on appropriate terms and conditions" when it is established there is noncompliance with Article 9. Section 9-513(a)(2) of the Code (810 ILCS 5/9-513(a)(2)) specifically requires a party to file a termination statement whenever "the debtor did not authorize the filing of the initial financing statement."

Plaintiff's filing on or about October 5, 2007 was not authorized by IPM and accordingly,

said filing was not in compliance with Article 9.

WHEREFORE, IPM prays that this court enter an order requiring Plaintiff to file a termination statement and grant such additional relief as this court deems appropriate.

## IV.  No Tortious Interference By Liliana

The Complaint admits that Liliana is a joint owner and IPM's Chief Executive Officer, Treasurer and Secretary (Compl. Pars. 8 and 14).

A claim of tortious interference with contracts cannot be made against a corporate officer in regard to contracts between the corporation and third parties, i.e. Liliana as the CEO regarding the purported contract between IPM and Plaintiff.

As noted recently in Ali v. Shaw, 481 F.3d 942 (7th Cir. 2007), "In the corporate world, officers enjoy immunity from these types of claims [tortious interference] provided they took the action in pursuit of the legitimate interests of the company. Swager v. Couri, 77 Ill.2d 173, 395 N.E.2d 921, 927-29, 32 Ill. Dec. 540 (Ill. 1979)." In Swager, the Illinois Supreme Court stated:

> "Illinois courts have deemed the duty of corporate officers and directors to their corporations' shareholders outweighs any duty they may have toward other contractual parties and thus have recognized a privilege for corporate officers and directors to use their business judgment and discretion on behalf of their corporations. (Citations omitted)" Id. 77 Ill.2d at 190-191, 395 N.E.2d at 927-928.

Other than the bare allegation in Paragraph 28 that Liliana, "upon information and belief" acted maliciously in order that IPM did not pay Plaintiff, there are no allegations that her conduct was totally unrelated to the furtherance of IPM's interest which gives rise to the privilege and immunity.

WHEREFORE, Count II (Tortious Interference with Contract - Against Liliana Shields)

must be dismissed.

## V. No Basis For Constructive Trust On Liliana

A constructive trust may be imposed when one party receives property belonging to another under circumstances in which the receiver would be unjustly enriched if allowed to retain the property. In re Estate of Wallen, 262 Ill.App.3d 61, 633 N.E.2d 1350 (1994).

The Complaint admits Liliana is an owner of IPM (Compl. Par. 8) and admits IPM is an Illinois corporation (Compl. Par. 6). Further, the Complaint alleges via the unsigned Note that it represents a "business loan for operations of the business" (Compl. Ex. 1, Par. 1).

Plaintiffs attempt to obtain a constructive trust against Liliana is in essence an attempt to disregard the corporate entity and pierce the corporate veil. Illinois law provides:

> "A corporation is a legal entity which exists separate and distinct from its shareholders, officers, and directors, who are not, as a general rule, liable for the corporation's obligations." (Gallagher v. Reconco Builders, Inc. (1980), 91 Ill. App. 3d 999, 1004, 47 Ill. Dec. 555, 415 N.E. 2d 560.) One of the primary purposes of doing business as a corporation is to insulate stockholders from unlimited liability for corporate activity. (Ted Harrison Oil Co. V. Dokka (1993), 247 Ill. App. 3d 791, 794, 187 Ill. Dec. 441, 617 N.E. 2d 898.) Limited liability will ordinarily exist even though the corporation is closely held or has a single shareholder. See Gallagher, 91 Ill. App. 3d at 1004. Wallen, 262 Ill. App.3d at 68.

There are no allegations akin to fraud to disregard the corporate entity and any such allegations must comply with Fed. R. Civ. P. 9(b).

As previously noted with regard to the UCC-1 Financing Statement, the unauthorized filing of same allegedly pursuant to an unsigned Note, IPM has no liability to the Plaintiff. Moreover, rather than impose a constructive trust on a shareholder of the corporation, Plaintiff should be ordered to file a termination statement releasing the improper encumbrance.

-5-

WHEREFORE, Count III (Constructive Trust Against Liliana Shields) must be dismissed.

Respectfully Submitted,

Frederick E. Roth, Attorney for
Defendants IPM and Liliana Shields

Roth Law Firm
47 E. Chicago Avenue
Suite 360
Naperville, IL 60540
(630) 778-1100
(630) 778-1121 (FAX)

-6-

**FILED**

**JANUARY 11, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**08 C 268**

| | | |
|---|---|---|
| ROBERT CASHEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| INTEGRATED PORTFOLIO | ) | |
| MANAGEMENT, INC. f/k/a FIRST | ) | |
| CREDIT SERVICES INCORPORATED | ) | |
| d/b/a STANLEY WEINBERG & | ) | Jury Demanded |
| ASSOCIATES, an Illinois corporation, | ) | |
| EARL SHIELDS, and LILIANA SHIELDS, | ) | |
| | ) | |
| Defendants. | ) | |

JUDGE DOW
MAGISTRATE JUDGE NOLAN

## COMPLAINT

Plaintiff Robert Cashen ("Plaintiff") brings this action against Defendants Integrated Portfolio Management, Inc. ("IPM"), Earl Shields, and Liliana Shields, and states as follows:

## NATURE OF THIS ACTION

1.     This is an action to recover sums due and owing to Plaintiff of $575,000 plus interest, penalties, attorneys' fees, and costs for amounts that Defendants IPM and Earl Shields (the "Borrowers") borrowed from Plaintiff in February 2007 pursuant to terms set forth in a Promissory Note (the "Note"). A copy of the Note is attached hereto as Exhibit 1. The Borrowers secured the Note with IPM assets and have failed to repay Plaintiff according to the terms of the Note. Plaintiff loaned these monies to the Borrowers for the benefit of IPM, Earl Shields, and Liliana Shields. As the controlling officer of IPM, and on behalf of IPM, Defendant Liliana Shields willfully and unjustifiably induced Defendant IPM to breach and/or to continue breaching its obligations to repay the Plaintiff in accordance with the terms of the Note. As

such, Plaintiff has filed this action for breaches of the Note and for a constructive trust against the Defendants.

## JURISDICTION AND VENUE

2.      Diversity jurisdiction exists over this action under 28 U.S.C. § 1332.  There is complete diversity of citizenship between the Plaintiff, on the one hand, and all Defendants, on the other hand.  The matter in controversy exceeds the sum of $75,000, exclusive of interests and costs.

3.      Plaintiff Robert Cashen is a resident and citizen of Florida and currently lives in Jupiter, Florida.

4.      Defendant Earl Shields is a resident and citizen of Illinois.  Shields and Plaintiff Cashen are stepbrothers.

5.      Defendant Liliana Shields is a resident and citizen of Illinois.  Defendants Earl Shields and Liliana Shields are married, although on information and belief they are in the process of divorcing.

6.      Defendant IPM is an Illinois corporation with its principal place of business in Lombard, Illinois.  IPM was formerly known as First Credit Services Incorporated.  IPM does business in this District.  First Credit Services Incorporated also does, or has at relevant times done, business as Stanley Weinberg & Associates.

7.      Venue is appropriate in the District pursuant to 28 U.S.C. § 1391.  The Defendants do business in this District and some of the acts complained of occurred in this District.

## FACTUAL BACKGROUND

8.      Defendants Earl Shields and Liliana Shields are joint owners of IPM.

9.    On or about February 1, 2007, Defendants First Credit Services and Earl Shields agreed to the terms of the Note in favor of the Plaintiff.  Pursuant to the terms of the Note, the Plaintiff lent five hundred seventy-five thousand dollars ($575,000.00) to First Credit Services, in exchange for repayment of all principal and installment payments by October 1, 2007 in an amount totaling $614,069.92.

10.    Earl Shields, based on his familial relationship with the Plaintiff, requested the loan for IPM's use. At all relevant times, each of the Defendants was aware of the loan. Each of the Defendants benefited and continues to benefit from the loan.

11.    The Note was secured by all property of IPM.  The Plaintiff filed a UCC Financing Statement regarding this loan on or about October 5, 2007.  (A copy of the financing statement is attached hereto as Exhibit 2.)  The Financing Statement lists the debtor as First Credit Services Incorporated, which is the former name of IPM and a name under which IPM does or did business.

12.    The Plaintiff complied with the terms of, and performed his obligations under, the Note, including providing $575,000.00 to First Credit Services, which it deposited.  (A copy of the check deposited by First Credit Services d/b/a Stanley Weinberg & Assoc. is attached hereto as Exhibit 3.)

13.    Under the terms of the Note, the Borrowers agreed that $614,069.92 would be due to Plaintiff no later than October 1, 2007.  Further, if any payments were overdue by more than ten (10) days, the Borrowers agreed to pay a late fee equal to five percent (5%) of the overdue payment.  Finally, the Borrowers agreed to pay all collection costs, including but not limited to interest, attorneys' fees, and court costs, in the event of any default.

14.     Defendant Liliana Shields was and is IPM's Chief Executive Officer, Treasurer and Secretary.

15.     Prior to and until September 25, 2007, Earl Shields was the President and Chief Operating Officer of IPM.    Earl Shields is currently not in those positions, having been terminated by Liliana Shields on or about that date.  Liliana Shields has taken over IPM.

16.     The actions of Liliana Shields and Earl Shields have also left IPM particularly vulnerable to waste and mismanagement, affecting both the Plaintiff's secured interests as well as his ultimate ability to recover.

17.     Plaintiff has not received the principal payment of $575,000 on October 1, 2007, or at any time prior to the filing of this complaint.  Without limitation, Plaintiff has also not received certain installment payments, nor the five percent late charge for the amount owed, as required.  As such, the Borrowers owe the Plaintiff in excess of $616,948.  This number does not include attorneys' fees, costs, and additional interest, all of which the Plaintiff is also entitled to recover.

## COUNT I
### (Breach of Contract – Against IPM and Earl Shields)

18.     Plaintiff Robert Cashen restates the allegations in Paragraphs 1 through 17 as though fully set forth herein.

19.     As set forth above, the Plaintiff and the Borrowers entered into an agreement that is valid and binding on Defendants.

20.     As set forth above, the Plaintiff performed all of his obligations under the agreement.

21.     The Borrowers breached the agreement by failing to repay the Plaintiff according to the terms of the Note.

4

22.     As a result of the Borrowers' breach, the Plaintiff has been damaged by at least $616,948 plus interest, attorneys' fees, and costs.

23.     In addition, the Plaintiff is entitled to statutory prejudgment interest pursuant to 815 ILCS 205/2.

### Prayer for Relief

WHEREFORE, Plaintiff Robert Cashen prays for judgment entered in his favor and against Defendants IPM and Earl Shields including:

a. an award of $616,948 plus contractual interest, prejudgment interest, attorneys' fees, and costs; and

b. any other relief that this Court may deem just and equitable.

### COUNT II
### (Tortious Interference with Contract – Against Liliana Shields)

24.     Plaintiff Robert Cashen restates the allegations in Paragraphs 1 through 23 as though fully set forth herein.

25.     As set forth above, the Plaintiff and the Borrowers entered into a valid and binding agreement.

26.     Defendant Liliana Shields has at all relevant times had knowledge of the Borrowers' obligation to repay the Plaintiff in accordance with the terms of the Note.

27.     On information and belief, Defendant Liliana Shields engaged in conduct that willfully and unjustifiably induced Defendant IPM to breach and/or to continue breaching its obligations to repay the Plaintiff in accordance with the terms of the Note.

28.     On information and belief, Defendant Liliana Shields acted and/or continues to act in a malicious and/or intentional manner in order that IPM may avoid its obligations under the Note and/or in wanton disregard of the Plaintiff's right to be paid.

29.     As a result of and subsequent to Defendant Liliana Shields's conduct, Defendant IPM breached and/or continues to breach its obligations to repay the Plaintiff in accordance with the terms of the Note.

30.     As a result, the Plaintiff has been damaged by at least $616,948 plus interest, attorneys' fees, and costs.

31.     In addition, the Plaintiff is entitled to statutory prejudgment interest pursuant to 815 ILCS 205/2.

### Prayer for Relief

WHEREFORE, Plaintiff Robert Cashen prays for judgment entered in his favor and against Defendant Liliana Shields including:

      a.  an award of $616,948 plus contractual interest, prejudgment interest, attorneys' fees, and costs;

      b.  punitive damages; and

      c.  any other relief that this Court may deem just and equitable.

### Count III
### (Constructive Trust Against Liliana Shields and Earl Shields)

32.     Plaintiff Robert Cashen restates the allegations in Paragraphs 1 through 31 as though fully set forth herein.

33.    Earl Shields, as the Plaintiff's stepbrother, asked that the Plaintiff lend $575,000 to, *inter alia*, IPM. The Plaintiff reposed his trust and confidence in his stepbrother and agreed to provide the loan to IPM, owned by his stepbrother and sister-in-law.

34.    For all relevant times, Earl Shields and Liliana Shields were married and/or shared business interests, including during the time that these monies were lent to IPM and/or owing to the Plaintiff.

35.    Defendant Liliana Shields had either actual or constructive knowledge of the loan, and benefited directly and/or indirectly from the monies that were obtained from the Plaintiff.

36.    Each and any of the Defendants would be unjustly enriched if they were to retain any of the assets or profits obtained directly or indirectly from the funds provided by the Plaintiff.

37.    Equity and good conscience dictate that any sums received from the Plaintiff and any assets which are held by IPM, Earl Shields, and/or Liliana Shields which are tainted by acts associated with the breach of repose and confidence in obtaining the $575,000 be held by Earl Shields and Liliana Shields as constructive trustees for the Plaintiff.

### Prayer for Relief

WHEREFORE, Plaintiff Robert Cashen prays for the following:

   a.  Judgment entered in Plaintiff Robert Cashen's favor and against the Defendants on all counts;

   b.  That Liliana Shields be declared the constructive trustee for all assets which she currently holds which have been obtained, improved or purchased, by funds received from Robert Cashen;

7

c.  That Earl Shields be declared the constructive trustee for all assets which he currently holds which have been obtained, improved or purchased by funds received from Robert Cashen;

d.  Such injunctive relief as is necessary to protect Plaintiff's interests and preserve any assets which may be the subject of any judgment or other relief granted by this Court;

e.  An award for Plaintiff Robert Cashen for all reasonable attorneys' fees, contractual interest, prejudgment interest, and costs; and

f.  Any other relief that this Court may deem just and equitable.

## DEMAND FOR TRIAL BY JURY

The Plaintiff hereby demands a jury for all claims and issues properly tried before a jury.

Respectfully submitted,

ROBERT CASHEN

By:    /s/ Michael Rachlis
       One of his attorneys

Michael Rachlis
Kevin B. Duff
Darnella J. Ward
Rachlis Durham Duff & Adler, LLC
542 S. Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3950
(312) 733-3952 (fax)

8

## PROMISSORY NOTE

$575,000.00

Jupiter, Florida
February 1, 2007

FOR VALUED RECEIVED, FIRST CREDIT SERVICES INCORPORATED, an Illinois corporation, and Earl Shields, an individual, (collectively, the "MAKER"), promises to pay to the order of Robert Cashen, an individual (the "PAYEE"), or to such other party or parties as the holder of this Note may from time to time designate, the principal sum of FIVE HUNDRED SEVENTY-FIVE THOUSAND AND NO/100 DOLLARS ($575,000.00), together with interest on the unpaid principal balance being paid at the rate of ten percent (10%) per annum, with accrued interest being payable in lawful money of the United States in eight (8) consecutive monthly installments of FOUR THOUSAND, EIGHT HUNDRED, EIGHTY-THREE and 74/100 DOLLARS ($4,883.74) on the first day of each month, commencing on March 1, 2007. The entire accrued and unpaid balance of principal and interest in the amount of $614,069.92 shall be due and payable in full on the earlier of October 1, 2007 or upon demand. There shall be a ten day grace period in connection with the due date of each such installment payment. In the event any payment of principal or interest is not paid within ten (10) days after it is due, then the Maker shall pay a late charge in an amount equal to five percent (5%) of the overdue payment.

### Additional Provisions

1.    Consideration.  This Promissory Note, being duly authorized and approved by all necessary corporate action of MAKER, evidences the receipt of money's worth by MAKER as the original principal amount of this Promissory Note which represents a business loan for operations of the business located at 800 Springer Drive, Lombard, IL 60148, and including a subordinated Security Agreement and UCC-1 Financing Statements of even date herewith given by MAKER to PAYEE, encumbering the above business, property and assets of MAKER as described therein. Earl Shields joined individually in the execution of this Promissory Note as inducement to the Payee to make the loan evidenced herein and but for the joinder of Earl Shields, PAYEE would not make the loan.

2.    Pre-Payment.  This Promissory Note may be prepaid, in full or in part at any time without premium or penalty.

3.    Usury.  In no event shall MAKER pay or PAYEE accept or charge any interest which, together with any other charges upon the principal or any portion thereof, howsoever computed, shall exceed the maximum lawful rate of interest allowable under the laws of the State of Florida from time to time. Should any provision of this Promissory Note or any other agreements between MAKER and PAYEE be construed to require the payment of interest which, together with any other charges upon the principal or any portion thereof, shall exceed the maximum lawful rate of interest, then any such excess shall be applied against the remaining principal balance or returned to MAKER at the option of PAYEE.

4.    Place of Payment.  Both principal and interest are payable to PAYEE or its designee at 1701 SE Cypress Park Lane, Jupiter, Florida 33478, or at such other place as the holder hereof may, from time to time, designate in writing.

5.    Default; Remedies.  In the event of a default by MAKER in any payment of principal or interest when and as the same shall become due and payable, or in the event of a default by MAKER of any other term or condition hereunder, or under the Security Agreement,



which such default continues uncured for thirty (30) days from the date of default, PAYEE may, at its option, accelerate maturity and the unpaid principal balance hereof and all accrued interest shall thereupon become immediately due and payable without additional demand or notice. Failure to exercise this option with respect to any failure or breach by MAKER shall not constitute a waiver of the right as to any subsequent failure or breach.

6.    Waivers; Notice.  MAKER, and all other parties liable for the payment of any sum or sums due or to become due under the terms of this Promissory Note, waive presentment, protest and demand and notice of protest, demand and dishonor, and non-payment of this Promissory Note, without notice, to deal in any way at any time with any party hereto, or to grant any extension or extensions of time for payment of any of said indebtedness or any other indulgences or forbearances whatsoever, or may release any of the security for this Promissory Note without in any way affecting the liability of any other party for the payment of this Promissory Note.

7.    Costs and Expenses.  MAKER agrees to pay (a) all costs of collection, including necessary and reasonable attorneys' fees and all court costs and related expenses (inclusive of any appellate and post judgment proceedings) in case the principal of this Promissory Note or any interest thereon is not paid on the respective installment due date or at maturity thereof, as applicable, whether suit be brought or not, and (b) the cost of all applicable intangible taxes and documentary stamp taxes which shall be promptly affixed to this Promissory Note or other applicable instrument.

8.    Security.  This Promissory Note is secured by the Security Agreement and UCC-1 Financing Statements.  A default by MAKER under the Security Agreement, shall also constitute a default under this Promissory Note, and vice versa, in which event PAYEE may declare all indebtedness of principal and interest hereunder forthwith to be immediately due and payable without notice or demand, and may take such actions as PAYEE deems appropriate under this Promissory Note, the Financing Statements, or the Security Agreement with such actions being taken on a cumulative non-exclusive basis; and any failure to exercise any particular option or action at any time with respect to this Promissory Note or such documents shall not constitute a waiver of the right as to any subsequent actions hereunder or thereunder.

9.    Default Interest Rate.  If the principal and interest due herein is not timely paid when due and/or from and after the maturity of this Promissory Note or as a result of a declaration of maturity made by the holder hereof, the entire principal remaining unpaid hereunder, shall bear interest at the highest interest rate then permitted under the laws of the State of Florida (the "Default Interest Rate") with the Default Interest Rate being applied from the date of such default.

10.    Amendments and Modifications.  This Promissory Note may not be amended or modified, nor shall any revision hereof be effected, except by an instrument in writing expressing such intention executed by PAYEE and directed to the MAKER.

11.    Due on Sale or Transfer.  In the event the assets purchased by MAKER from PAYEE including the business as a going concern are sold, transferred or assigned by MAKER during the term of this Note, then the entire amount of principal and interest then owing, at the option of the PAYEE, shall be immediately due and payable.

12.    Choice of Law and Venue.  This Promissory Note shall be governed as to

2

validity, interpretation, construction, effect and all other aspects of the laws of the State of Florida without regard to any conflict of law principles. Venue for any litigation hereunder shall be the courts in Martin County, Florida.

13.    <u>Severability</u>.  Any provision of this Promissory Note which is unenforceable or contrary to state law, the inclusion of which would affect the validity, legality or enforcement of this Promissory Note, such provision shall be of no effect, and in such case, all the remaining terms and provisions of this Promissory Note shall be fully effected, the same as though no such invalid provision had ever been included in this Promissory Note.

14.    <u>Corporate Action</u>.  MAKER is in good standing under the laws of the State of Illinois, and MAKER is able to enter into this Promissory Note and perform hereunder. This Promissory Note constitutes a valid, binding and unrestricted obligation of MAKER and has been approved by all necessary corporate action.

15.    <u>Miscellaneous</u>. The headings hereunder are for convenience and do not interpret this Promissory Note. The singular shall include the plural, and vice versa.

IN WITNESS WHEREOF, MAKER has executed this Promissory Note and delivered this Promissory Note to PAYEE in Martin County, Florida, this 1st day of February, 2007.

                                [MAKER]

                                FIRST CREDIT SERVICE INCORPORATED,
                                An Illinois corporation

                                By: _____
                                        Earl Shields, its President


                                _____
                                Earl Shields, Individually

3

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
561-744-1124

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

ROBERT CASHEN
1701 SE CYPRESS PARK LN
JUPITER, FL 33478

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME

FIRST CREDIT SERVICES INCORPORATED

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 800 SPRINGER DRIVE | LOMBARD | IL | 60148 | USA |

TYPE OF ORGANIZATION: CORPORATION    JURISDICTION OF ORGANIZATION: ILLINOIS

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME

SECURED PARTY'S NAME

| 9a. ORGANIZATION'S NAME / LAST NAME | FIRST NAME | | |
|---|---|---|---|
| CASHEN | ROBERT | | |
| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1701 SE CYPRESS PARK LN | JUPITER | FL | 33478 | USA |

ALL GOODS, FIXTURES, PERSONALTY, APPLIANCES, INVENTORY, MACHINERY, EQUIPMENT, FURNITURE, AND TRADE FIXTURES OWNED BY IT AND LOCATED AT 800 SPRINGER DRIVE, LOMBARD, IL 60148, AND ANY ADDITIONS AND/OR REPLACEMENTS THERETO

10-1-2009    69 W. WASHINGTON

SEND 10-3-2009    SUITE 1240
                  CHICAGO, IL. 6060;

FILING FEE $20⁰⁰

NB OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)





| Account | Serial | Sequence | Paid Date | Amount |
|---|---|---|---|---|
| 7100573401 | 20414 | 24147976 | 02/16/2007 | $575,000.00 |

