IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT CASHEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:08-cv-00268 |
| ) | Honorable Robert M. Dow, Jr. |
| INTEGRATED PORTFOLIO ) | |
| MANAGEMENT, INC. f/k/a FIRST ) | |
| CREDIT SERVICES INCORPORATED ) | Jury Demanded |
| d/b/a STANLEY WEINBERG & ) | |
| ASSOCIATES, an Illinois corporation, ) | |
| EARL SHIELDS, and LILIANA SHIELDS, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS LILIANA SHIELDS AND INTEGRATED PORTFOLIO MANAGEMENT'S MOTION TO DISMISS**

As seen in his complaint, Plaintiff Robert Cashen ("Cashen") has been completely (and illegally) taken advantage of by his brother (Earl Shields), his sister-in-law (Liliana Shields) and their company (Integrated Portfolio Management ("IPM")), effectively swiping approximately $600,000 in February 2007, but now adopting a "see no evil, speak no evil, hear no evil" approach. After leading Cashen astray, the moving Defendants (IPM and Liliana Shields) seek to do the same with this Court, suggesting that Plaintiff has no right to recover the monies directly deposited into the coffers of IPM and distributed into their pockets, which they have failed to return to Cashen. Nonsense.

Putting aside the distaste that arises from this type of opportunistic conduct, as further set forth below, neither the facts, the law, nor good old fashioned common sense support the Defendants' sleight of hand. The motion to dismiss should be denied.

1

## RELEVANT FACTS

First Credit Services Inc. is a company that was owned by the husband and wife team of Earl Shields and Liliana Shields.  Robert Cashen is the brother of Earl Shields, and brother-in-law of Liliana Shields.  (Complaint, ¶¶ 4-6, 8.)

In or around February 2007, Defendants First Credit Services and Earl Shields (with the knowledge (and certainly to the benefit) of Liliana Shields), asked Cashen to loan them a huge sum of money comprising much of his life savings, in the amount of five hundred seventy-five thousand dollars.  (Complaint, ¶¶ 9-10.)  Promises were made that the monies would be returned in a few months, with interest, along with other promises and commitments.  The terms pursuant to which Defendants were to pay back Cashen were referenced in what is Exhibit 1.  (Complaint ¶ 13.)  The loan was also to be secured by all property of IPM.  (Complaint ¶ 11.)   The Plaintiff later filed a UCC Financing Statement regarding this loan on or about October 5, 2007.  (A copy of the financing statement is attached hereto as Exhibit 2.)  The Financing Statement lists the debtor as First Credit Services Incorporated, which is the former name of IPM and a name under which IPM does or did business.

After providing the writing to Cashen, Cashen provided IPM a check, which was then endorsed by it, deposited in its account, and spent ultimately for the benefit of all of the Defendants.  (Complaint, ¶ 12 and Exhibit 3.)   Subsequently, Defendants provided some installment payments, but not all.  Indeed, in or around September 2007, Liliana Shields began divorce proceedings and orchestrated the removal of Earl Shields from his positions at IPM.  (Complaint ¶¶ 5, 15.) On October 1, 2007, Defendants did not provide the principal payment, necessitating the filing of this suit.  (Complaint, ¶ 17.)  Count I of

the Complaint for breach of contract is against IPM and Earl Shields, Count II is against Liliana Shields for tortuous interference with contract and Count III is against Liliana and Earl Shields for constructive trust.

## **ARGUMENT**

**I.  Defendant IPM's Arguments To Dismiss Count I Fail For Various Reasons Including Lack of Negotiability And Ratification.**

This Court is well aware of the standard of review on a Rule 12 motion. Plaintiff suggests that the application of this standard to the allegations, in and of itself, more than demonstrates the incredible nature of the Defendant's arguments and request for relief. As pled, in February 2007 Defendant IPM, Earl Shields (IPM's President and Cashen's brother), and Lilliana Shields (IPM's Secretary and Cashen's sister-in-law) sought funds from Cashen just shy of $600,000. (Complaint ¶¶ 9-17.) Cashen was informed that in return for his provision of funds, Cashen would receive certain installment payments, and would receive return of all amounts (principal and interest) by October 1, 2007. Cashen then presented a check to IPM, which was endorsed by IPM, and directly deposited and cashed by Earl and Liliana's company (a copy of the check is attached as Exhibit 3). (Complaint ¶ 12). The vast majority of these monies has not been paid back. To suggest that there is no basis for a cause of action under these alleged facts borders on delusional.

Defendant IPM attempts to dismiss the first count based on a superficial argument that the promissory note is a "negotiable instrument." That argument is inaccurate. Illinois statutes provide that "[e]xcept as provided in this Section, for the purposes of Section 3-104(a), a promise or order is unconditional unless it states (i) an express condition to payment, *(ii) that the promise or order is subject to or governed by another writing, or (iii) that rights or obligations with respect to the promise or order are*

3

*stated in another writing.* 810 ILCS 5/3-106. Illinois and other courts have refused to recognize an instrument as negotiable where the sum payable can only be calculated by reference to a source outside the instrument. *See, e.g. Johnson v. Johnson*, 244 Ill. App. 3d 518, 525, 614 N.E.2d 348, 353 (1st Dist. 1993).

Consistent with these pronouncements, the note at issue does not contain the requisite elements of negotiability. For example, Exhibit 1 to the Complaint provides in part that if there is a default, the "entire principal remaining unpaid shall bear interest at that highest rate of interest then permitted under the laws of the state of Florida (the "Default Interest Rate"). *See, e.g., Johnson,* 244 Ill. App. 3d at 527, 614 N.E.2d at 354 (holding instrument non-negotiable where reference to applicable interest was located outside of the instrument). When combined with the fact that there are other references to a "security agreement" within the Note which also refer to rights and obligations outside of the instrument, the Defendants' "negotiability" arguments are simply off base. Moreover, the case relied upon by Defendants, *Fidelity Federal Savings & Loan v. Pioneer National Title Insurance*, 428 F. Supp. 1382 (S.D. Ill. 1977), involves a factual scenario completely different from the matter at bar. In that case, the plaintiff brought suit against defendants apparently to recover under a note that was *not* between the plaintiff and defendant, a fundamental difference between that case and the matter at bar.[1]

---

[1] *Fidelity Federal Savings & Loan.,* involved a construction escrow agreement between the lender (plaintiff), a bankrupted defaulter on unpaid notes (who was not a party to the action), and a title company (defendant) 428 F. Supp. at 1384. Defendant's role in the transaction, by way of an escrow agreement between defendant, the defaulter and plaintiff, was basically to regulate draws and make sure the project was completed and if the project was not finished (by the defaulter through its contract with a builder), to then either finish the project or pay Plaintiff's notes. *Id.* at 1384-85. When defendant elected to finish the project, plaintiff attempted to hold the defendant liable on the defaulted notes. *Id.* Indeed the Court stated that "defendant is not a signatory of the mortgage notes and that it did not undertake under the escrow agreement to become guarantor of those notes." Id. at 1385. The issue essentially became whether the escrow agreement was or was not an act or agreement undertaken that would allow for plaintiff's recovery of the notes as to the defendant, not simply whether the notes were unsigned.

However, even if IPM was accurate in its argument that the agreement itself is negotiable, Defendants' lack of signature on the face of the note is not dispositive at this stage. The Uniform Commercial Code contemplates the application of common law defenses. *See Spec-Cast Inc. v. First National Bank & Trust Co. of Rockford,* 128 Ill. 2d 167, 170 538 N.E.2d 543, 545 (1989)("[T]he Uniform Commercial Code contemplates that it shall be supplemented by common law principles"). In that vein, the doctrine of ratification has been applied in situations where questions of negotiability have been raised:

> [T]he whole point of ratification is to give legal effect to an otherwise voidable [contract]." Ratification occurs when 'the party to be charged with ratification clearly evinces an intent to abide and be bound by the act.' The intent to be bound may be express or implied from a party's acts or deeds. Ultimately, ratification is a question of fact which is determined by looking at the totality of the circumstances.

*Anderson v. Rizza Chevrolet, Inc.,* 9 F.Supp.2d 908, 912 (N.D. Ill. 1998); *see also Spec-Cast Inc.,* 128 Ill. 2d at 177-79, 170 538 N.E.2d at 547 (affirming application of doctrine of ratification against a party who made claim that instrument not enforceable because it was not executed); *Sanwa Business Credit, Inc. v. Continental National Bank & Trust Co. of Chicago*, 247 Ill. App. 3d 155, 165, 617 N.E.2d 253, 260 (1st Dist. 1993) (applying doctrine of ratification against party arguing that defendant bank should credit its account for lack of endorsement by one of the co-payees on the checks; in holding that plaintiff's actions constituted ratification, the court reasoned that plaintiff's actions were consistent with the payment of the check, despite the fact that there was lack of proper signatures.)

Here, as pled, a check was presented to Defendants which was immediately endorsed by IPM (under its former business name), and cashed, with proceeds later

distributed.  Under these circumstances, the doctrine of ratification should act to defeat the pending motion.

However, if this Court deems it appropriate and necessary, Plaintiff will be happy to amend the complaint at this time (rather than wait for discovery to occur) against the Defendants to include several additional causes of action including but not limited to fraud – conduct that appears to be amply demonstrated by the arguments presented in the pending motion – and unjust enrichment.  Of course, discovery in this matter may provide facts and grounds for these and other amendments. .

**II.     Illinois Law Recognizes Individual Liability Of An Officer That Interferes With Their Company's Obligations, And Therefore Requires That Defendants' Motion To Dismiss Count II Be Denied.**

Defendant Liliana Shields' motion directed to Count II pronounces that (i) a corporate officer cannot interfere with his or her corporate agreements, and (ii) that officers enjoy a qualified privilege relative to the conduct at issue.  Defendants have severely misstated and misapplied the law.[2]

Initially, Illinois law is directly contrary to the unsupported arguments of Defendants.[3]  Illinois courts have recognized that an executive officer of a corporation

---

[2] Defendants cite to *Ali v. Shaw,* 481 F.3d 942 (7th Cir. 2007), to support their contentions for corporate officer immunity from tortious interference claims when the corporate officer "took the action in pursuit of the legitimate interest of the company." However, the facts in *Ali* are inapposite to the matter at bar, involving the dismissal of a an at-will employee for a legitimate business purpose (insubordination). However, the court recognized that "when a third party maliciously sticks [her] nose into the economic relationship between an employee and an employer and causes the employee to lose her job, that third party is subject to the tort action…." *Id*. at 945.

[3] Defendants citation to  *Swager v. Couri,* 77 Ill.2d 173, 395 N.E.2d 921 (Ill. 1979) is off base as well.  In *Swager*, plaintiffs (a partnership of architects that contracted with a company) brought suit under a tortious interference theory against the officers, directors and shareholders of the company after the company dissolved and the services contract went unperformed.  In that case, the court ruled against the plaintiffs in finding that the company dissolution was done for legitimate purposes.  Neither the facts in that decision nor the law discussed act to defeat Cashen's cause of action, as that decision in fact recognized that an officer's decision, done without justification or with malice, supports a tortious interference claim. *Id*. at 190, 395 N.E.2d at 927.

incurs individual and personal liability for willfully and maliciously inducing the company in which it serves to breach its contract with another corporation. *See, e.g., W. P. Iverson & Co. v. Dunham,* 18 Ill. App. 2d 404, 426, 152 N.E.2d 615, 625 (1st Dist. 1958)(reversing in part trial court's dismissal of claim involving individual officer's liability for causing certain acts by corporation).

Second, there is no qualified or other privilege associated with the acts complained of here. For example, Illinois courts, while acknowledging that qualified privileges can exist, also recognize that they are not applicable where the officer acts for her own personal interest, and contrary to the best interests of the corporation. *See, e.g., Chapman v. Crown Glass Corp.*, 197 Ill. App. 3d 995, 1006, 557 N.E.2d 256, 263 (1st Dist. 1990)(affirming jury verdict for liability relative to actions of corporate officers, explaining that conduct would not be justified where the interference is for personal gain or for the purpose of harming another, none of which furthers a corporate interest); s*ee also WP Iverson, supra.*

Consistent with Illinois law, as pled, Liliana Shields, cognizant of and a beneficiary of the proceeds of her brother-in-law's significant infusion of cash, has willfully and maliciously caused IPM from making payments. (Complaint, ¶¶ 1, 26-29.) In so doing, Lilliana Shields has done so solely for her own benefit, not only monetarily, but emotionally, as well. Indeed, she can strike out against her soon to be ex-husband's brother, and perhaps injure her soon to be ex-husband with whom she is currently in a heated divorce battle. (Complaint, ¶¶ 5, 15.) In any event, such acts to are purposely done to accomplish her own personal interests, and in no way are these actions in the best interests of the corporation.

7

The allegations of the Complaint are more than adequate, particularly where as here, one needs to satisfy notice pleading requirements. To this point, the movants conveniently ignore the allowance for pleading "upon information and belief," particularly when those matters are controlled by defendants. *See, e.g., Tankersley v. Albright,* 514 F.2d 956, 964-65 (7th Cir. 1975)("Under these circumstances we cannot say that failure to allege details of specific transactions precludes litigation beyond the pleading stage. The various discovery devices available under the Federal Rules of Civil Procedure provide ample opportunities for narrowing and particularizing these claims"); *Carroll v. Morrison Hotel Corporation*, 149 F.2d 404, 406 (7th Cir. 1945)("there appears to be no good reason why such pleading is not permissible, as in the instant case, where the matters are peculiarly within the knowledge of the defendants"). Thus, there is simply no basis for a motion to dismiss at this stage.

### III.    Defendants' Constructive Trust Arguments Are Inapplicable.

Defendant Liliana Shields' final improper argument is that the constructive trust count should be dismissed. Based on the facts alleged in the complaint, and discussed above, that recommendation is thoroughly unwarranted.[4]    Illinois law is rich and

---

[4] Defendants rely on *In re Estate of Wallen,* 262 Ill. App. 3d 61, 633 N.E.2d 1350 (2nd Dist. 1994), *Gallagher v. Reconco Builders, Inc.,* 91 Ill. App. 3d 999, 415 N.E.2d 560 (1st Dist. 1980), and *Ted Harrison Oil Co. v. Dokka,* 247 Ill. App. 3d 791, 617 N.E.2d 898 (4th Dist. 1993) to object to the constructive trust allegations under a corporate veil theory. However, none of these cases remotely support Defendants' position. *In re Estate of Wallen*, the court failed to allow for piercing of the corporate veil where plaintiff was attempting to enforce a foreign money judgment as to the deceased's corporation, but had not included him as a defendant in the foreign lawsuit**.** This court nonetheless, allowed for plaintiff's equitable claim of constructive trust reasoning that: "[w]here one retains property under circumstances whereby in equity and good conscience he ought not keep it, recovery will be allowed under a theory of constructive or resulting trust; this type of remedy is available under a variety of circumstances and it is not always necessary that fraud or a breach of fiduciary relationship be present to impose such trust." 262 Ill. App. 3d at 73, 633 N.E.2d at 1360-61. *The Gallagher* court*,* despite Defendants citations, reasoned that "a corporate entity will be disregarded and the veil of limited liability pierced where it would otherwise present an obstacle to the protection of private rights or where the corporation is merely the alter ego or business conduit of a governing or dominating personality." 91 Ill. App. 3d at 1004, 415 N.E.2d at 563 (citations omitted). Indeed, it ultimately held that the sole stockholder, as well as the corporation was liable

abundantly clear that Lilliana Shields is an appropriate subject for the constructive trust claim.

Under Illinois law, a constructive trust is imposed on property held by someone when the property equitably should go to another. *Village of Wheeling v. Stavros*, 89 Ill. App. 3d 450, 454, 411 N.E.2d 1067, 1070 (1st Dist. 1980)("A constructive trust is imposed by a court because the person holding to title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property.")(citations omitted). Illinois courts have imposed a constructive trust merely on the basis of one spouse's receipt of benefits from the other spouse's fraudulent activities or activities in breach of fiduciary obligations, *regardless of knowledge*. *See, e.g., LaBarbera v. LaBarbera*, 116 Ill. App. 3d 959, 967, 452 N.E.2d 684, 689, 690 (1st Dist. 1993)(constructive trust imposed on spouse without any evidence that she took part in or had knowledge of the other spouse's activities); *Roth v. Carlyle Real Estate, Ltd.*, 129 Ill. App. 3d 433, 439, 472 N.E.2d 836, 840 (1st Dist. 1984)("To allow plaintiff to retain the funds given her by her husband would be to allow her to 'profit by a wrong.'"); *Matter of Estate of Savage*, 259 Ill. App. 3d 328, 332, 631 N.E.2d 797, 800 (4th Dist. 1994)("The court will not be misled by subterfuges where fraudulently obtained funds are transferred from one spouse to another.").

Here, as alleged, Robert Cashen is attempting to prevent the disposition of any property that Lilliana Shields maintained under her custody or control until it can be

---

for breach of contract stating "[t]here can be no doubt that 'some element of unfairness, something akin to fraud or deception' was present." 91 Ill. App. 3d at 1007 415 N.E.2d at 565 (citations omitted). *Ted Harrison Oil Company, Inc.* also does not bode well for defendant's superficial mode of argument. In that case, the court upheld personal liability against a shareholder where, *inter alia,* the shareholder was receiving monetary benefits from the corporation while at the same time defaulting on its debts. 247 Ill. App. 3d at 798 617 N.E.2d at 902-903

9

determined whether such property was obtained or preserved through the illegal activities of Earl and Liliana Shields and/or the Company she now dominates. Put differently, if Liliana Shields has been unjustly enriched through the use and receipt of Cashen's monies, such assets are more than appropriately held under constructive trust.

IV.   **Other Than Demonstrating Their Fraudulent And Improper Conduct In Originally Obtaining Hundreds of Thousands of Dollars From Plaintiff, The Defendants' Arguments Regarding The UCC-1 Are Irrelevant And Not Appropriately Raised As Part Of A Motion To Dismiss.**

Moving Defendants devote a few paragraphs of their motion to the argument that the UCC-1 filing by Cashen is invalid. On its face, this is not an appropriate subject for a motion to dismiss, but rather involves what is tantamount to an action for declaratory relief.

Further evidence of this point are the moving Defendants' arguments. Initially, while correctly noting that "Section 9-502 . . . does not require the financing statement itself to be signed" (Defendants' Motion at 3), the moving Defendants argue that no authorization for such a filing occurred. However, this argument is easily dispelled under the same ratification principles discussed above. *See supra* I; *see also* Code Comments to 810 ILCS 5/9-502 ("Law other than this Article, including the law with respect to ratification of past acts, generally determines whether a person has the requisite authority to file a record under this Article."). Ultimately, this issue is a question of fact that will be the subject of discovery and determined through this proceeding. The argument, however, is not properly made or relevant to the motion to dismiss, and can be left in large measure to be addressed at a later time.

## CONCLUSION

For the foregoing reasons, Plaintiff Robert Cashen respectfully requests that Defendants' IPM and Liliana Shields Motion To Dismiss be denied. Alternatively, if the Court grants, in part or in whole, the pending motion, that Robert Cashen be provided twenty days to file an amended complaint.

Dated: April 18, 2008

                 Respectfully submitted,

                 ROBERT CASHEN


          By:  /s/ Michael Rachlis
             Michael Rachlis (#6203745)
             Darnella J. Ward (#6279493)
             Rachlis Durham Duff & Adler, LLC
             542 S. Dearborn Street, Suite 900
             Chicago, Illinois 60605
             (312) 733-3950
             (312) 733-3952 (fax)
             mrachlis@rddlaw.net
             dward@rddlaw.net