**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT CASHEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 08-CV-268 |
| | ) | |
| INTEGRATED PORTFOLIO | ) | |
| MANAGEMENT, INC. f/k/a FIRST | ) | Judge Robert M. Dow, Jr. |
| CREDIT SERVICES INCORPORATED | ) | |
| d/b/a STANLEY WEINBERG & | ) | |
| ASSOCIATES, an Illinois corporation | ) | |
| EARL SHIELDS, and | ) | |
| LILIANA SHIELDS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants Integrated Portfolio Management, Inc., Liliana Shields and Earl Shields,[1] move to dismiss [23] Counts I-III of Plaintiff's complaint for failure to state a claim under Rule 12(b)(6).[2] For the following reasons, Defendants' motion to dismiss [23] is denied as to Count I and granted without prejudice as to Counts II and III, and Plaintiff is given leave to file an amended complaint within 21 days of the entry of this decision.

**I.     Background**

This lawsuit arises out of a loan between family members, at least partially for business purposes, that was not repaid to Plaintiff's satisfaction. Plaintiff Robert Cashen ("Cashen" or "Plaintiff") is Defendant Earl Shields' stepbrother. Compl. at ¶ 4. At the time that the complaint was filed, Earl Shields was married to Defendant Liliana Shields, but the complaint alleges that

---

[1] Earl Shields was not included as a party in the initial motion to dismiss, but he subsequently joined in the motion.

[2] Although labeled a "motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and (3)," all of Defendants' arguments for dismissal are for failure to state a claim under Rule 12(b)(6).

they were in the process of divorcing. *Id*. at ¶ 5. Earl Shields and Liliana Shields are joint owners of Integrated Portfolio Management, Inc. ("IPM"). *Id*. at ¶ 8. IPM is an Illinois corporation which formerly was known as First Credit Services Inc. ("FCS") and also does (or has done) business as Stanley Weinberg & Associates. *Id*. at ¶ 6. Liliana Shields is IPM's Chief Executive Officer, Treasurer and Secretary. *Id*. at ¶ 14. Prior to September 25, 2007, Earl Shields was the President and Chief Operating Officer of IPM. *Id*. at ¶ 15. Liliana Shields terminated Earl Shields on or about September 25, 2007, and has taken over IPM. *Id*.

According to Cashen's complaint, on or about February 1, 2007, Defendants FCS and Earl Shields agreed to the terms of a note in favor of the Plaintiff. Compl. at ¶ 9. Plaintiff attached the note to his complaint, although it was not signed by any of the Defendants. Under the terms of the note, Plaintiff was to loan $575,000 to FCS in exchange for repayment of all principal and installment payments by October 1, 2007, in an amount totaling $614,069.92. *Id*. Earl Shields requested the loan for IPM's use and each of the defendants were aware of and benefitted from the loan. *Id*. at ¶ 10.

Cashen alleges that he complied with the terms of, and performed his obligations under, the note by providing $575,000 to FCS, which Defendants deposited.[3] Compl. at ¶ 12. Plaintiff did not receive the principal payment of $575,000 on October 1, 2007, or at any time prior to the filing of the complaint. *Id*. at ¶ 17. In addition, Plaintiff has neither received certain installment payments, nor the five percent late charges to which he was entitled under the note. *Id*. Plaintiff therefore seeks recovery of more than $616,948. *Id*. Plaintiff further alleges that the actions of Liliana Shields and Earl Shields have left IPM particularly vulnerable to corporate waste and

---

[3] Plaintiff attached a photocopy of the check to the complaint. While the check itself is largely illegible, it appears to be from Cashen made payable to Stanley Weinberg & Associates.

mismanagement, affecting both the Plaintiff's secured interests as well as his ultimate ability to recover. *Id*. at ¶ 16.

Plaintiff attached to his complaint a UCC financing statement, filed in October of 2007. It lists "all goods, fixtures, personality, appliances, inventory, machinery, equipment, furniture, and trade fixtures owned by it [FCS] and located at [FCS] and any additions and/or replacements thereto." Compl. Ex. 2.[4]

## II.   Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic*, 127 S.Ct. at 1969. For present purposes, the Court accepts the allegations in the

---

[4] Defendants argue that the financing statement was not properly authorized pursuant to Article 9 of the UCC and therefore ask the Court to enter an order requiring Plaintiff to file a termination statement. While Defendants appear to be correct that unauthorized financing statements are ineffective to perfect a security interest and that a person filing an unauthorized statement may be required to file a termination statement (see 810 ILCS 5/9-513(a); 810 ILCS 5/9-509, cmt. 3), a motion to dismiss is not the proper vehicle for seeking such relief.

complaint as true, as precedent instructs. See, *e.g.*, *Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004). The Court at this juncture takes no position on whether any of the allegations are, in fact, well founded.

As noted above, Plaintiff has attached to his complaint various documents, including an unsigned promissory note, a copy of a deposited check, and a UCC financing statement. "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). While the Court must generally accept Plaintiff's allegations as true, the Court is free to examine independently and form its own conclusions as to the proper construction and meaning of documents attached to and made part of a complaint. See *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1327 at 766 (1990)). To the extent that the terms of attached documents conflict with the allegations of the complaint, the attached documents control. *Centers v. Centennial Mortgage Inc.*, 398 F.3d 930 (7th Cir. 2005). "[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999) (quoting *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992)).

### III. Discussion

Plaintiff's complaint consists of three counts: Count I – Breach of Contract against IPM and Earl Shields; Count II – Tortious Interference with Contract against Liliana Shields; and, Count III – Constructive Trust against Liliana Shields and Earl Shields.

### A. Breach of Contract

To state a claim for breach of contract under Illinois law, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) its own performance under the terms of the contract; (3) a breach of the contract by the defendant; and (4) an injury suffered as the result of the defendant's breach. See, *e.g.*, *Dames & Moore v. Baxter & Woodman*, 21 F. Supp. 2d 817, 823 (N.D. Ill. 1998) (citation omitted); *Klem v. Mann*, 279 Ill. App. 3d 735 (1st Dist. 1996). Defendants' motion to dismiss Count I rests entirely on the premises that (i) the unsigned promissory note attached to the complaint is a negotiable instrument subject to Article 3 of the Illinois UCC (810 ILCS 5/1-101 *et seq.*) and (ii) under Article 3, there can be no liability on an unsigned negotiable instrument. Because the Court rejects the first premise, the motion to dismiss is denied as to Plaintiff's breach of contract claim.[5]

As Defendants correctly state, the term "negotiable instrument" is defined in Article 3, Section 3-104 of the Illinois UCC. An instrument is negotiable if it contains an "unconditional *promise or order* to pay a fixed amount of money, with or without interest or other charges described in the promise" and "(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an

---

[5] Because this Court's jurisdiction is based on diversity, the Court applies the law of Illinois absent any suggestion by the parties that (i) another state's law should apply and (ii) the other state's law materially differs from Illinois law in some relevant respect. Both parties appear to assume that Illinois law applies here, because they cite Illinois law almost exclusively in their briefs. The Court notes that the promissory note attached to the complaint states that it shall be governed by the laws of the State of Florida. However, neither party even mentions the choice of law provision or cites Florida law, much less argues that Florida law differs from Illinois law. Accordingly, the Court will apply Illinois law to this motion. See *Indiana Ins. Co. v. Pana Cmty Unit Sch. Dist. No. 8*, 314 F.3d 895, 900 (7th Cir. 2002) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits")

undertaking or power to give, maintain, or protect collateral to secure payment * * *." 810 ILCS 5/3-104(a) (emphasis added). A promise is unconditional unless it states "(i) an express condition to payment; (ii) that the promise or order is subject to or governed by another writing, or (iii) that rights or obligations with respect to the promise or order are stated in another writing." 810 ILCS 5/3-106(a). And, under Section 3-401(a), "[a] person is not liable on an instrument unless (i) the person signed the instrument, or (ii) the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under Section 3-402."

Plaintiff raises two arguments in support of his contention that the note is not a negotiable instrument: (i) the note references applicable interest rates extrinsic to the document; and (ii) it references a "security agreement." Neither argument defeats negotiability. The Illinois UCC directly addresses, and permits, the inclusion of externally determined interest rates without defeating negotiability. See 810 ILCS 5/3-112 ("The amount or rate of interest may be stated or described in the instrument in any manner and may require reference to information not contained in the instrument"). As to the security interest, "the promise or order may contain an undertaking or power to give, maintain, or protect collateral to secure payment." 810 ILCS 5/3-106(a). The mere reference to the security agreement thus is insufficient to defeat negotiability. See 3-106(a) ("A reference to another writing does not of itself make the promise or order unconditional").

However, UCC Comment 1 to the very section on which Defendants rely makes clear that Defendants' argument for dismissal cannot succeed. That Comment states as follows:

> The definition of "negotiable instrument" defines the scope of Article 3 since Section 3-102 states: "This Article applies to negotiable instruments." The definition in Section 3-104(a) incorporates other definitions in Article 3. An instrument is either a "promise," defined in Section 3-103(a)(9), or "order,"

6

defined in Section 3-103(a)(6). A promise is a written undertaking to pay money *signed by the person* undertaking to pay. An order is a written instruction to pay money *signed by the person* giving the instruction. Thus, the term "negotiable instrument" *is limited to a signed writing* that orders or promises payment of money.

810 ILCS 5/3-104, Cmt. 1 (emphasis added). As the Comment makes clear, where the "promise" or "order" at issue is unsigned, it cannot be enforceable as a negotiable instrument under Article 3. Here, there is no signature, and thus no argument under Article 3 either for enforcement as a negotiable instrument or for dismissal of a breach of contract claim. Article 3 simply does not apply. And because Defendants raised no other argument for dismissal of Plaintiff's breach of contract claim, the motion to dismiss is denied as to Count I.[6]

### B. Tortious Interference with Contract

The only issue raised in Defendants' motion to dismiss Count II is whether Liliana Shields, as a corporate officer of IPM, can be subject to liability for tortious interference with IPM's contract with Plaintiff. "It is well settled law that a party cannot tortiously interfere with his own contract; the tortfeasor must be a third party to the contractual relationship." *Douglas Theater Corp. v. Chicago Title & Trust Co.*, 288 Ill. App. 3d 880, 884 (5th Dist. 1997) (citing *Quist v. Bd. of Trs.*, 258 Ill. App. 3d 814, 821 (3d. Dist. 1994); *IK Corp. v. One Fin. Place P'ship*, 200 Ill. App. 3d 802, 819 (1st Dist. 1990)). Because Liliana Shields is not a party to the contract and has been sued individually, the contract cannot be considered her "own." Indeed, it is clear that, as a legal matter, claims for interference with contracts between the corporation and

---

[6] The Court notes that the Official Comment to UCC § 3-401 states that "[n]othing in this section is intended to prevent any liability arising apart from the instrument itself. The party who does not sign may still be liable on the original obligation for which the instrument was given, or for breach of any agreement to sign, or in tort for misrepresentation, or even on an oral guaranty of payment where the statute of frauds is satisfied. He may of course be liable under any separate writing." The Court expresses no opinion at this time as to whether any of those alternative grounds has been, or can be, alleged by Plaintiff. Nor does the Court express any opinion as to whether any such allegations could be sustained under the Illinois UCC. At this stage, all that the Court decides with respect to Count I is that Defendants' motion to dismiss on the UCC grounds cited in its brief is denied.

third parties may be brought against corporate officers in some circumstances. See *Lowenthal Secs. Co. v. White Paving Co.*, 351 Ill. 285 (1932); *Swager v. Couri*, 77 Ill. 2d 173 (1979); *H.F. Philipsborn & Co. v. Suson*, 59 Ill. 2d 465 (1975); *HPI Health Care Servs. Inc.*, 131 Ill. 2d 145 (1989). The critical question is whether Cashen sufficiently has pleaded such a claim.

To state a claim for tortious interference with a contract, the complaint generally must allege "(1) the existence of a valid and enforceable contract between plaintiff and another; (2) defendant's awareness of the contractual obligation; (3) defendant's intentional and unjustified inducement of a breach of contract; (4) a subsequent breach by the other caused by defendant's wrongful conduct; and (5) damages." *Lawson Prods., Inc. v. Chromate Indus. Corp.*, 158 F. Supp. 2d 860 (N.D. Ill. 2001) (citing *Indeck N.A. Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416 (1st Dist. 2000)); see also *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154-55 (1989). In addition, when a corporate insider is alleged to have interfered with a contract to which the insider's corporation was a party, Illinois courts have placed on the plaintiff the added burden of proving lack of justification – rather than requiring the defendant to prove that his actions were justified. That extra burden reflects the recognition by the Illinois courts of the strong interest in protecting corporate officers from liability for decisions made on behalf of the corporation. *HPI Health Care Servs., Inc.*, 131 Ill. 2d at 156; see also *Swager*, 77 Ill. 2d at 190 (reiterating that an officer is not restrained from influencing the actions of the corporation in good faith).

The Illinois Supreme Court has held that corporate officers acting "in accordance with their business judgment and discretion" who interfere with their corporation's contractual relations lack the malice required for liability in tort. *Swager*, 77 Ill. 2d at 189. At the same time, actions that lie outside of, or beyond, those taken for legitimate business purposes may

subject insiders to liability. Despite the general privilege that corporate officers enjoy when they act in the corporation's best interest, tortious interference claims are permitted when the breach is induced 'without justification or maliciously.'" *Id.* at 190 (quoting *H.F. Philipsborn & Co.*, 59 Ill. 2d at 474). A corporate officer is "not justified in engaging in conduct which is totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege." *HPI Health Care Servs., Inc.*, 131 Ill. 2d at 158 (citations omitted). A defendant whose privilege is based upon their role in exercising their business judgment would not be justified in inducing breach of contract solely to harm the plaintiff. *Id.*

Applying those principles of Illinois law, here Plaintiff is required to allege that Liliana Shields lacked justification to cause IPM to breach the contract. Plaintiff has failed to include allegations that satisfy the heightened requirements explained above. At most, Plaintiff alleges that "Liliana Shields engaged in conduct that willfully and unjustifiably induced Defendant IPM to breach and/or to continue breaching its obligations to repay the Plaintiff in accordance with the terms of the Note." What is missing are any allegations, for example, that (i) Liliana Shields' actions were totally unrelated to or antagonistic to IPM's interest; (ii) Liliana Shields acted solely to harm Plaintiff; or (iii) she acted in any other manner that otherwise would state a cause of action under the Illinois standards.

As a corporate insider, Liliana Shields is protected by the privilege that inures to officers in making business decisions. Plaintiff's allegations fail to account at all for this privilege and his complaint does not state a claim that could overcome the privilege. However, because tortious interference could be actionable, Plaintiff may attempt to plead such a claim in an amended complaint if he believes in good faith that the claim can be maintained under Illinois

law on the facts alleged in this case. See Fed. R. Civ. P. 15(a)(2) (stating that courts "should freely give leave [to amend] when justice so requires").

### C. Constructive Trust

Plaintiff also seeks to impose a constructive trust, with Earl Shields and Liliana Shields as trustees, on the $575,000 he originally loaned to the Defendants. While the count is titled "Constructive Trust," it appears that Plaintiff may in fact be attempting to assert a claim for unjust enrichment.

Defendants correctly argue that there is no cause of action in Illinois for constructive trust.[7] Rather, "[a] constructive trust is an equitable remedy that may be imposed to redress unjust enrichment caused by a party's wrongful conduct." *Charles Hester Enters., Inc., v. Illinois Founders Ins. Co.*, 114 Ill. 2d 278, 293 (1986). It is created "when a court declares the party in possession of wrongfully acquired property as the constructive trustee of that property." *Suttles v. Vogel*, 126 Ill. 2d 186, 193 (1988).

Plaintiff has alleged that "[e]ach and any of the Defendants would be unjustly enriched if they were to retain any of the assets or profits obtained directly or indirectly from the funds provided by the Plaintiff." Compl. at ¶ 36. Plaintiff's response to the motion to dismiss likewise states that "if Liliana Shields has been unjustly enriched through the use and receipt of Cashen's monies, such assets are more than appropriately held under constructive trust." Pl. Resp. at 10. To the extent that Plaintiff desires to assert in Count III a claim for unjust enrichment and seeks a

---

[7] Plaintiff's first two counts are premised on the existence of an enforceable contract. Illinois courts have held that where a contract exists between the parties, a plaintiff is unable to sue in equity for unjust enrichment. See *Ctr. for Athletic Med., Ltd. v. Indep. Med. Billers of Illinois, Inc.,* 383 Ill. App. 3d 104 (1st Dist. 2008); *Hedlund and Hanley, LLC*, 376 Ill. App. 3d at 207. While a contract is required for the breach of contract claim and the tortious interference claim, Plaintiff is permitted to plead in the alternative and therefore is not precluded from bringing an unjust enrichment or similar quasi-contractual claim. While the facts alleged in the prior counts are incorporated into Count III, the legal conclusions are not. See *Gershengorin v. Vienna Beef, Ltd.*, 2007 WL 2840476, at *5 (N.D. Ill. Sept. 28, 2007).

constructive trust as a remedy, Plaintiff may attempt to clarify the theory or theories under which he wishes to proceed and the remedy or remedies that he desires in an amended complaint. In that regard, the Court observes that "[t]he doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies, including the equitable remedy of constructive trust and the legal actions of *assumpsit* and restitution or quasi-contract." *HPI Health Care Servs., Inc.*, 131 Ill. 2d at 160 (citing 1 G. Palmer, The Law of Restitution § 1.1, at 2-4).

## IV. Conclusion

Defendants' motion to dismiss [23] is denied in part and granted in part; the motion is denied as to Court I and granted without prejudice as to Counts II and III, and Plaintiff is given leave to file an amended complaint within 21 days of the entry of this decision.

Dated: November 20, 2008   _____
                            Robert M. Dow, Jr.
                            United States District Judge